UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DEBRA M. CLARK,

                              Plaintiff,

        v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

                              Defendant.

CASE NO. 3:17-cv-05768-JLR-JRC

REPORT AND RECOMMENDATION
ON PLAINTIFF'S COMPLAINT

NOTING DATE: November 14, 2018.

        This matter has been referred to United States Magistrate Judge J. Richard Creatura

pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as

authorized by *Mathews, Sec'y of  H.E.W. v. Weber*, 423 U.S. 261, 271–72 (1976).  This matter

has been fully briefed.  *See* Dkt. 13, 14, 15.

        After considering and reviewing the record, the Court finds that the ALJ erred when she

discounted the opinions of two of plaintiff's examining psychologists—Katrina Higgins, Psy.D.,

and Alysa Ruddell, Ph.D.  Regarding Dr. Higgins' opinion, the ALJ erred because there is not

substantial evidence to support the ALJ's opinion that plaintiff acted improperly when she

1  procured Dr. Higgins' opinion.  The ALJ also failed to provide legitimate reasons to reject Dr.

2  Higgins' opinion that plaintiff's PTSD symptoms prevented her working.  Similarly, the

3  improvement in plaintiff's depression symptoms and reduction in her bipolar medication were

4  not legitimate reasons to discount Dr. Ruddell's opinion that plaintiff suffered from PTSD and

5  anxiety disorder causing limitations to her ability to work.  Because the RFC would have differed

6  had the ALJ not discounted Dr. Ruddell's and Dr. Higgins' opinions, the errors were not

7  harmless.

8

9                                        BACKGROUND

10       Plaintiff Debra C. was born in March 1976 and was 38 years old on the alleged date of

11  disability onset of August 2, 2014.  *See* AR. 354.  Plaintiff's highest level of education was the

12  ninth grade.  AR. 341.  Plaintiff worked as a cashier/department manager, motel assistant

13  manager/housekeeper, warehouse worker, and home care aide.  *See* AR. 348–52.  She left her

14  last job, as a cashier/department manager, both to move to Washington State and because of her

15  mental health conditions.  AR. 347.

16       According to the ALJ, plaintiff has at least the severe impairments of bipolar disorder II,

17  anxiety, borderline personality disorder, moderate asthma, fibromyalgia syndrome, insulin

18  dependent diabetes, obesity, hypertension, coronary artery disease "status-post myocardial

19  infarction and status-post stent to right coronary artery," and left lower extremity neuropathy.

20  AR. 104.

21       At the time of the hearing, plaintiff lived with her family.  AR. 140.

22

23                                      PROCEDURAL HISTORY

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 2

1    Plaintiff's applications for disability insurance benefits pursuant to 42 U.S.C. § 423 (Title

2    II) and Supplemental Security Income benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of

3    the Social Security Act were denied initially and following reconsideration.  *See* AR. 229, 232.

4    Plaintiff's requested hearing was held before Administrative Law Judge Marilyn Mauer (the

5    "ALJ") on March 9, 2016.  *See* AR. 129.  On April 12, 2016, the ALJ issued a written decision in

6    which she concluded that plaintiff was not disabled pursuant to the Social Security Act.  *See* AR.

7    116.

8        On July 21, 2017, the Appeals Council denied plaintiff's request for review, making the

9    written decision by the ALJ the final agency decision subject to judicial review.  AR. 1; *see* 20

10    C.F.R. § 404.981.  In October 2017, Plaintiff filed a complaint in this Court seeking judicial

11    review of the ALJ's written decision.  *See* Dkt. 4.  Defendant filed the sealed administrative

12    record regarding this matter on March 5, 2018.  *See* Dkt. 9.

13        In plaintiff's Opening Brief, she raises the following issues:  (1) whether the ALJ failed

14    to give specific and legitimate reasons for rejecting the testimony of examining psychologists

15    Katrina Higgins and Alysa Ruddell and (2) whether the ALJ failed to give clear and convincing

16    reasons for rejecting plaintiff's testimony.  Dkt. 13, at 1.

17

18                                        STANDARD OF REVIEW

19        Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

20    social security benefits if the ALJ's findings are based on legal error or not supported by

21    substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

22    Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

23

24

1

DISCUSSION

2

**1. Examining psychologists' opinions**

3

Plaintiff argues that the ALJ failed to give specific and legitimate reasons to reject the

4

opinion testimony of examining psychologists Katrina Higgins, Psy.D., and Alysa Ruddell,

5

Ph.D. Dkt. 13, at 1.

6

When a treating or examining physician's opinion is contradicted, that opinion can be

7

rejected "for specific and legitimate reasons that are supported by substantial evidence in the

8

record." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995) (citing *Andrews v. Shalala*, 53

9

F.3d 1035, 1043 (9th Cir. 1995)); *see also* 20 C.F.R. § 404.1527(a)(2) (2012) ("Medical opinions

10

are statements from physicians and psychologists or other acceptable medical sources that reflect

11

judgments about the nature and severity of your impairment(s). . . .").[1] "'Substantial evidence'"

12

is more than a scintilla, less than a preponderance, and is "'such relevant evidence as a

13

reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881

14

F.2d 747, 750 (9th Cir. 1989) (quoting *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989))

15

(citation omitted).

16

*A. Dr. Higgins' Opinion*

17

In 2016, Dr. Higgins examined plaintiff and diagnosed her with PTSD and alcohol use

18

disorder in remission. AR. 1144. Dr. Higgins opined that plaintiff lacked the ability to manage

19

her emotions, which Dr. Higgins linked to plaintiff's history of trauma, and Dr. Higgins noted

20

that plaintiff reported significant anxiety and depression symptoms. *See* AR. 1144–45. Based

21

on her PTSD diagnosis, Dr. Higgins concluded that plaintiff could not "handle the stress of a

22

23

24

[1] In 2017, the Administration amended 20 C.F.R. § 404.1527 and re-codified substantially the same language as 20 C.F.R. § 404.1527(a)(1).

typical work environment" and would have a "very difficult time maintaining gainful employment" due to irritability and angry outbursts, lack of focus, and difficulty maintaining attendance.  AR. 1145.

The ALJ gave little weight to Dr. Higgins' opinion. AR. 113.  Instead, the ALJ gave weight to the opinion of an examining psychologist, Stephanie Hanson, Ph.D.  *See* AR. 112.  Dr. Hanson opined that although plaintiff suffered from anxiety and depression and had a history of PTSD and bipolar disorder, plaintiff could "likely" "complete a normal work day and week without interruption from psychological condition."  AR. 1117.

The first reason that the ALJ provided for rejecting Dr. Higgins' opinion was that Dr. Higgins "was selected by the claimant's representative 'to assist' in her application" and that plaintiff had foregone an examination with another doctor, Lezlie Pickett, to be examined by Dr. Higgins.  AR. 113.  However, the fact that a plaintiff, rather than the Commissioner, procured an opinion is not a legitimate reason to disregard the opinion unless there is evidence of actual impropriety.  *See Lester*, 81 F.3d at 832.  There is no such evidence in this record.

Although defendant argues that "opinions sought for litigation may be properly rejected" (Dkt. 14, at 13), the cases that defendant relies upon involve opinions that were questionable for reasons other than merely the identity of the requesting party.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (the opinion was at variance with the doctor's own treatment notes and was worded ambiguously in an apparent attempt to assist the plaintiff's case); *Burkhart v. Bowen*, 856 F.2d 1335, 1339 (9th Cir. 1988) (the ALJ rejected the doctor's statement at issue for more reasons than just that it was obtained by the plaintiff).  These cases are consistent with the rule that without actual evidence of impropriety, the ALJ cannot reject an opinion merely because it resulted from an examination procured by the plaintiff.

1    Here, the ALJ appeared to find impropriety on the basis that plaintiff skipped Dr.

2    Pickett's examination to be examined by her own psychologist. *See* AR. 113 (noting "that the

3    claimant did not attend the consultative examination with Lezlie A. Pickett, Ph.D.," and "instead

4    attended an examination with" Dr. Higgins).  However, substantial evidence does not support a

5    finding of impropriety.  Although plaintiff did request a different examining psychologist than

6    Dr. Pickett, plaintiff deferred to the Administration's choice of alternative.  AR. 393.  When the

7    Administration did not reschedule plaintiff's examination, plaintiff did not attend her

8    appointment with Dr. Pickett.  AR. 1112.  However, the Administration's notes also show that

9    the Administration rescheduled plaintiff to have an appointment with Dr. Hanson—an

10    appointment that plaintiff attended.  *See* AR. 112, 1125.  Plaintiff's failure to attend an

11    appointment with Dr. Pickett is thus not a legitimate reason to reject Dr. Higgins' opinion.

12    The ALJ's other reasons for rejecting Dr. Higgins' opinion were that Dr. Higgins'

13    recommended limitations were "inconsistent with the medical evidence detailing conservative

14    treatment, including limited use of medication, answering of depression screens in the negative,

15    and reporting reduced depression over the course of treatment."  AR. 113.  In support of these

16    findings, the ALJ relied upon plaintiff's 2015 medical records—namely history and physical

17    reports (AR. 1015–28) and health questionnaires (AR. 1081–99).

18    In this regard, it is crucial to distinguish between plaintiff's depression symptoms and Dr.

19    Higgins' PTSD diagnosis—a distinction that the ALJ failed to make.  Although there is

20    substantial evidence to support that plaintiff's depression symptoms improved somewhat (AR.

21    1081, 1099) and that she answered depression screens in the negative in October and November

22    2015 (AR 1015, 1017), these are not legitimate reasons to discredit the entirety of Dr. Higgins'

23    opinion.  Dr. Higgins did not diagnose plaintiff with depression.  Rather, Dr. Higgins diagnosed

24

1    plaintiff with PTSD, causing plaintiff's symptoms of anxiety, depression, and insomnia. *See* AR.

2    1144–45. Further, when Dr. Higgins opined that plaintiff's psychological symptoms made it

3    impossible for her to handle typical workplace stress, Dr. Higgins specifically related this

4    conclusion to plaintiff's hypervigilance around others, irritability, and angry outbursts—not

5    plaintiff's depressive symptoms. *See* AR. 1145.

6         The ALJ's remaining reason for rejecting Dr. Higgins' opinion was that it was

7    inconsistent with the "limited use of medication" in the cited records. AR. 113. This appears to

8    be a reference to plaintiff's statement that she was not on bipolar medication for the year

9    preceding September 2015 and the decrease in her bipolar disorder medications in November

10   2015. *See* AR. 1016, 1019, 1020. Again, these are not legitimate reasons to disregard the

11   opinion of Dr. Higgins, who opined that plaintiff did not suffer from bipolar disorder. *See* AR.

12   1144–45.

13        In sum, improvement in depression symptoms and reduction in bipolar medication in

14   2015 were not legitimate reasons to reject Dr. Higgins' opinion regarding plaintiff's PTSD, and

15   absent evidence of impropriety, the ALJ should not have discounted Dr. Higgins' opinion merely

16   because it was procured by plaintiff. The ALJ failed to give specific and legitimate reasons

17   supported by substantial evidence in giving "little weight" to Dr. Higgins' opinion. *See* AR. 113.

18   *B. Dr. Ruddell's Opinion*

19        In 2014, Alysa Ruddell, Ph.D., examined plaintiff and diagnosed her with insomnia,

20   PTSD, and anxiety disorder. AR. 910. Dr. Ruddell assigned plaintiff a global assessment of

21   functioning ("GAF") score of 45, indicating serious symptoms, and concluded that her highest

22   score in the last year was 55, indicating moderate symptoms. AR. 910. Dr. Ruddell opined that

23   plaintiff had marked limitations to her abilities to learn new tasks and adapt to changes in a

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 7

1   routine work setting, as well as moderate limitations to a number of basic work activities,

2   including plaintiff's ability to work without interruption from her psychological symptoms.  AR.

3   911.

4       Although the ALJ accepted Dr. Ruddell's PTSD and anxiety disorder diagnoses, the ALJ

5   gave "little weight" to Dr. Ruddell's opinions about limitations.  AR. 112.  Instead, the ALJ gave

6   great weight to the opinion of Dr. Hanson, which included that plaintiff had only mild limitations

7   to her abilities to learn new tasks and could likely complete a normal work day and week without

8   interruption from any psychological condition.  *See* AR. 112, 1117.

9       As with Dr. Higgins' opinions, the ALJ found that Dr. Ruddell's limitations were

10  "inconsistent with the medical evidence detailing conservative treatment, including limited use

11  of medication, answering of a depression screen in the negative, and reporting reduced

12  depression over the course of treatment."  *See* AR. 112–13.  The ALJ also rejected Ruddell's

13  GAF scores for reasons including that they did "not adequately consider the evidence of record."

14  AR. 112.

15      Like Dr. Higgins, Dr. Ruddell did not diagnose plaintiff with depression.  *See* AR. 910.

16  Rather, Dr. Ruddell diagnosed plaintiff with insomnia, PTSD, and anxiety disorder.  AR. 910.  In

17  Dr. Ruddell's opinion, plaintiff's PTSD and anxiety disorder caused a number of symptoms that

18  would interfere with her ability to perform basic work activities.  AR. 910.  Notably, Dr. Ruddell

19  opined that plaintiff would suffer marked interference from anxiety, fear, panic, and

20  obsessive/compulsive symptoms.  AR. 910.  And plaintiff would also suffer moderate

21  interference from her conditions of anger and aggression, depression, and avoidance behavior.

22  AR. 910.  Thus depression was only a minor contributing factor to Dr. Ruddell's overall opinion.

23

24

1    The depression-related evidence that the ALJ relied on was not a legitimate reason to discount

2    Dr. Ruddell's opinion that anxiety disorder and PTSD limited plaintiff's ability to work.

3    Regarding the ALJ's reliance on plaintiff's "limited use of medication" as a basis to

4    reject Dr. Ruddell's opinion, as discussed above, it was plaintiff's bipolar disorder medications

5    that were decreased. *See* AR. 1016, 1020. Like Dr. Higgins, Dr. Ruddell did not diagnose

6    plaintiff with bipolar disorder, and thus, as with Dr. Higgins' opinion, this was not a legitimate

7    reason to discount Dr. Ruddell's opinion.

8    Insofar as the ALJ relied on her findings regarding improvement in plaintiff's depression,

9    she also failed to give a legitimate reason to discount Dr. Ruddell's GAF scores for plaintiff. *See*

10    AR. 112. Notably, the Administration has directed ALJs that they may not simply ignore GAF

11    scores but should treat those scores as medical opinions if they come from acceptable medical

12    sources. *See* Administrative Message 13066, *available in* 1 THOMAS E. BUSH, SOCIAL SECURITY

13    DISABILITY PRACTICE § 245.1 (2d ed. 2017).

14    This court also notes that the ALJ recited the same statement—that limitations were

15    inconsistent with the medical evidence detailing conservative treatment, including limited use of

16    medication, answering of depression screens in the negative, and reporting reduced depression

17    over the course of treatment—nearly verbatim when discussing the weight given to

18    psychologists' opinions. *See* AR. 112–13. Criticizing a medical opinion "with boilerplate

19    language that fails to offer a substantive basis for" the ALJ's conclusion is error. *Garrison v.*

20    *Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014). Thus the ALJ further erred to the extent that she

21    rejected Dr. Ruddell's opinion on the basis of a boilerplate statement about conservative

22    treatment.

23

24

1   Understanding mental health disorders can be complex—even for mental health

2   professionals.  But the Administration should avoid discounting the effects of one mental

3   disorder because of certain symptoms that may be shared in common with another mental

4   disorder.  For instance, if someone suffers from a recurring cough, this could be a symptom

5   related to tuberculosis or simply a common cold.  Distinguishing between symptoms and

6   disorders is a realm better left to the mental health professionals.

7   Accordingly, the ALJ failed to provide legitimate reasons supported by substantial

8   evidence when she rejected Dr. Ruddell's and Dr. Higgin's opinions.

9   *C.  Not Harmless Error*

10   Plaintiff argues that the errors in rejecting examining psychologists' opinions were not

11   harmless and that a remand for further proceedings is appropriate.  Dkt. 13, at 18.  Defendant

12   argues that any error was harmless because "the vocational expert properly accounted for all of

13   Plaintiff's limitations that the ALJ found credible."  Dkt. 14, at 15.  However, the harmless error

14   analysis is not whether the ALJ erred, but whether the errors "are 'inconsequential to the ultimate

15   nondisability determination. . . .'"  *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015)

16   (quoting *Stout v. Cmm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006)).  Further, "'a reviewing court

17   cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ,

18   when fully crediting the testimony, could have reached a different disability determination.'"  *Id.*

19   (quoting *Stout*, 454 F.3d at 1056).

20   Here, the ALJ found that plaintiff could perform "light work" and included some

21   additional limitations related to plaintiff's mental impairments:  the ALJ included that plaintiff

22   could "understand, remember, and carry out simple instructions in a setting with no strict

23   production pace, no teamwork assignments, and no public contact."  AR. 108.  However, the

24

1    ALJ specifically declined to include the limitations discussed by Dr. Ruddell.  AR. 112.  Dr.

2    Ruddell's opinion included that plaintiff had "marked" limitations in her ability to learn new

3    tasks and adapt to changes in a routine work setting.  AR. 911.  Further, Dr. Ruddell assessed

4    "moderate" limitations to a number of plaintiff's basic work activities, including her ability to

5    work without interruption from her psychological symptoms.  AR. 911.  Had the ALJ not

6    erroneously rejected Dr. Ruddell's opinion, the ALJ would likely have included additional

7    limitations in the RFC.

8          Further, Dr. Higgins opined that plaintiff's PTSD symptoms meant that she would have

9    difficulty maintaining attendance at work without interruption and even could not "handle the

10   stress of a typical work environment."  AR. 1145.  Again, the ALJ did not include a limitation

11   related to attendance in the RFC.  *See* AR. 108, 113.  This Court cannot confidently conclude

12   that no reasonable ALJ fully crediting Dr. Higgins' and Dr. Ruddell's opinions could have

13   reached a different disability determination.  The errors were not harmless.

14         Plaintiff also contends that the ALJ erred when she found plaintiff "only partially

15   consistent with the evidence of record."  *See* AR. 114; Dkt. 13, at 13.  Because the Court

16   concludes that the ALJ erred in assessing medical opinion evidence, on remand, the Court must

17   re-evaluate all the medical evidence.  Plaintiff will also be able to present new evidence and

18   testimony.  *See* Program Operations Manual System, GN 03106.036 Court Remand Orders,

19   https://secure.ssa.gov/poms.nsf/lnx/0203106036 (last visited October 30, 2018) ("[A] court order

20   vacating the [ALJ's] prior decision and remanding the case to the Commissioner voids the prior

21   decision . . . and thus returns the case to the status of a claim 'pending' before SSA. . . .  The ALJ

22   processes the case in the same way as a regular hearing case and issues a decision").

23

24

Because reconsideration of the medical evidence and any new evidence or testimony will impact the ALJ's assessment of plaintiff's subjective testimony, the ALJ must reconsider plaintiff's testimony on remand.

<u>CONCLUSION</u>

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Deputy Commissioner for further proceedings consistent with this Report and Recommendation. **JUDGMENT** should be for **plaintiff**, and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **November 14, 2018**, as noted in the caption.

Dated this 31st day of October, 2018.

J. Richard Creatura
United States Magistrate Judge